**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**NICHELLE W.**

                          **Plaintiff,**                          **21-CV-501Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**

───────────────────────────────

<u>**DECISION AND ORDER**</u>

        As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #14.

**BACKGROUND**

        Plaintiff applied for supplemental security income ("SSI"), benefits with the

Social Security Administration ("SSA"), on February 15, 2019, at the age of 50, alleging

disability due to post traumatic stress disorder ("PTSD"), anxiety, depression,

neuropathy and hypertension. Dkt. #6, pp. 53-54.

        On August 3, 2020, plaintiff appeared with counsel and testified at an

administrative hearing by telephone before Administrative Law Judge ("ALJ"), Arthur

Patane. Dkt. #6, pp.41-52. Plaintiff testified that she suffers from agoraphobia and PTSD from sexual abuse by her father during her childhood. Dkt. #6, p.44. She explained that she cannot even go to the store, explaining that "[s]omeone does everything for me, and has been for the last two years." Dkt. #6, p.45. She reiterated that she only leaves her home when she has to, explaining that the thought of leaving her home takes her breath away because she "feel[s] like something might happen to me." Dkt. #6, p.46. Plaintiff testified that it takes her two or three days to psych herself up to go to a doctor and explained that they understand her anxiety and get her right in so she doesn't have to wait in the waiting room because she will panic and leave. Dkt. #6, p.48.

Plaintiff successfully completed inpatient treatment for alcohol and crack in June-July of 2019, where she received a bipolar diagnosis. Dkt. #6, p.46. She testified that she hears voices that "are mean and nasty and . . . tell me negative things" and also sees shadows "[a]ll the time." Dkt. #6, pp.46-47. She explained that the voice and night terrors prevent her from sleeping. Dkt. #6, p.6. She experiences night terrors "[e]very single day." Dkt. #6, pp.47-48. Plaintiff relapsed with alcohol and pills after she was unable to go to her grandmother's funeral. Dkt. #6, p.51.

Plaintiff also suffers from arthritis in her back, torn cartilage and ligaments in her knees, and plantar fasciitis in her feet. Dkt. #6, pp.44 & 49. Plaintiff's roommate does everything for her. Dkt. #6, p.51. She trusts him, but is concerned  that he is getting older and has his own health problems. Dkt. #6, p.51. Plaintiff's roommate does her shopping; she does not cook other than using the microwave; and she bathes

"randomly." Dkt. #6, pp.48-49. She is unable to leave her apartment to do her laundry. Dkt. #6, p.49. She spends most of the day in bed with the television on to drown out the noise in her head. Dkt. #6, p.49. She doesn't really walk anywhere except from her bedroom to the bathroom and kitchen and is unable to stand or sit for long, explaining that she is always up and down because she is "so uncomfortable." Dkt. #6, p.50. She uses a grabber to avoid bending. Dkt. #6, p.50. Plaintiff testified that she is in constant agony and that it is hard for her to lay, sit or stand. Dkt. #6, p.49.

The ALJ submitted a Vocational Interrogatory to Vocational Expert ("VE"), Margaret Heck on August 3, 2020. Dkt. #6, p.300. The ALJ asked the VE to assume an individual with plaintiff's age, education and past work experience with a limitation to light work except that she could only frequently use stairs, balance, stoop, kneel, crouch and crawl, who is capable of unskilled work with simple changes to the workplace setting  and can have occasional interaction with others. Dkt. #6, p.302. The VE responded that such an individual could work as a silverware wrapper, marking clerk, and routing clerk, each of which were unskilled, light exertion positions. Dkt. #6, p.309. In response to counsel's written inquiry, the VE advised that plaintiff would be required to tolerate at least minimal (defined as up to 30% of the workday), contact with supervisors, co-workers and the public. Dkt. #6, p.319. The VE further advised that employees would typically tolerate no more than two unexcused absences on a monthly basis for more than three months and no more than 10-15% time off-task during the course of a work day. Dkt. #6, p.319.

The ALJ rendered a decision that plaintiff was not disabled on September 29, 2020. Dkt. #6, pp.20-33. The Appeals Council denied review on March 9, 2021. Dkt. #6, p.7. Plaintiff commenced this action seeking review of the Commissioner's final decision on April 15, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step

-4-

sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her application for benefits on February 15, 2019; (2) plaintiff's degenerative joint disease of the knee, degenerative disc disease of the lumbar spine; bilateral plantar fasciatus, obesity, anxiety disorder, depressive disorder, PTSD, and substance use disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light

work[1] except that she is restricted to frequent use of stairs, balancing, stooping,

kneeling, crouching, crawling, occasional interaction with others and unskilled work[2]

with no more than simple changes in the work place setting; and (5) plaintiff had no

past relevant work but was capable of working as a silverware wrapper, marking clerk,

and routing clerk, each of which were unskilled, light exertion positions, and was not,

therefore, disabled within the meaning of the SSA. Dkt. #6, pp.25-33.


        Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical*

*Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68

(Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner

is no longer required to afford any specific evidentiary weight to medical opinions, but is

obligated to consider all medical opinions and evaluate their persuasiveness based on

the following five factors: (1) supportability; (2) consistency; (3) relationship with the

claimant; (4) specialization; and (5) other factors, with particular importance placed

upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F.

Supp.3d 2, 7 (W.D.N.Y.  2021), *citing* 20 C.F.R. § 416.920c(a) & (c). To allow a

reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain

their consideration of the supportability and consistency factors by pointing to specific

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. 20 C.F.R.§ 416.967(b).

[2] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. § 416.968(a).

evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 416.920c(b)(2).

        With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 416.920c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 416.920c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

<u>Stale Opinion Evidence</u>

Plaintiff argues that the ALJ erred in evaluating the opinion evidence because it was formed without benefit of imaging of plaintiff's spine, even though the ALJ determined that plaintiff suffered from a severe impairment of degenerative lumbar disc disease. Dkt. #8-1, pp.8-13. More specifically, plaintiff argues that an opinion based upon an incomplete and/or stale medical record cannot constitute substantial evidence. Dkt. #8-1, p.11.

The Commissioner argues that plaintiff fails to demonstrate that the lumbar spine x-ray supports greater limitations than those set forth in the RFC and notes that the ALJ properly evaluated opinion evidence from three doctors, including opinion evidence based upon a consultative examination. Dkt. #9-1, pp.1 & 7.

Medical source opinions that are conclusory, stale or based upon an incomplete medical record cannot constitute substantial evidence in support of an ALJ's determination of a plaintiff's RFC. *Camille v. Colvin*, 104 F. Supp.3d 329, 343-344 (W.D.N.Y. 2015), *aff'd,* 652 Fed. App'x 25 (2d Cir. 2016). A medical opinion is not necessarily stale simply based on its age. *Fambo v. Comm'r of Soc. Sec*, 474 F. Supp.3d 603, 608 (W.D.N.Y. 2020). "A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Id.* However, a medical opinion may be stale where subsequent treatment notes indicate a claimant's condition has deteriorated. *Whitehurst v. Berryhill*, 16-CV-1005, 2018 WL 3868721, at *4 (W.D.N.Y. Aug. 14, 2018). Absent evidence of a meaningful change in plaintiff's medical condition, a consultative examination is not stale simply because time

has passed. *Cruz v. Comm'r of Soc. Sec.*, No. 16-CV-965, 2018 WL 3628253, at *6 (W.D.N.Y. July 31, 2018).

In the instant case, there is no evidence of deterioration of plaintiff's physical condition during the pendency of her application for SSI benefits. To the contrary, as the ALJ noted, plaintiff's medical records for the relevant time period "do not document significant treatment for the [plaintiff's] back impairment (or any other physical impairment.)." Dkt. #6, p.27. Significantly, the ALJ recognized that "quite recent x-rays of the lumbar spine taken in June 2020 showed moderate joint space narrowing with only slight progression compared with previous imaging studies." Dkt. #6, p.27. More specifically, that x-ray report, dated June 11, 2020, compared a lumbar spine x-ray from May 15, 2006, finding

> Grossly stable lumbar spine alignment with the exception of trace spondylolithesis at L3-4 and L4-5. Slight progression of pre-existing degenerative disc space narrowing most pronounced at L5-S1 and to lesser extent L3-4. No compression fracture.

Dkt. #6, p.996. Nothing in this report suggests a physical deterioration that would warrant further development of the record or call into question the results of a consultative examination that was conducted less than one year prior..

Materiality of Substance Use

Plaintiff also argues that the ALJ failed to perform a materiality analysis given the ALJ's determination that her substance use disorder was severe and symptomatic during the relevant period. Dkt. #8-1, pp.13-15. More specifically, plaintiff

argues that the ALJ improperly focused on substance abuse as the cause of plaintiff's symptoms, thereby conflating the effect of substance abuse with the initial disability determination. Dkt. #8-1, p.15.

The Commissioner responds that the ALJ was not required to consider the materiality of plaintiff's substance use because he properly concluded that she was not disabled despite her severe substance use disorder. Dkt. #9-1, pp.1 & 15-17. More specifically, the Commissioner argues that the ALJ properly determined that plaintiff's relapse was short-lived, rendering Dr. Ippolito's assessment of plaintiff's limitations during such relapse less persuasive. Dkt. #9-1, p.16.

In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"), which amended the Social Security Act so that an individual will not be considered disabled if alcoholism or drug addiction would be a material contributing factor to the Commissioner's determination that the individual is disabled. *Cage v. Comm'r of Soc. Sec*, 692 F.3d 118, 123 (2d Cir. 2012), *citing* 42 U.S.C. § 1382c (a)(3)(J), *cert. denied*, 570 U.S. 919 (2013). In analyzing cases where substance abuse is present, the regulations make clear that the ALJ must first make a determination as to disability by following the five-step sequential evaluation process without segregating any effects that might be due to substance use disorders. *Colbert v. Comm'r of Soc. Sec.*, 18-CV-702, 2019 WL 6648562, at *3 (W.D.N.Y. Dec. 6, 2019). In other words, the ALJ's initial disability determination should concern strictly symptoms, not causes. *Id.*

Where an ALJ conflates the effect of substance abuse with the initial disability determination itself, remand is required. *Piccini v. Comm'r of Soc. Sec.*, No. 13-CV-3461, 2014 WL 4651911 at *12 (S.D.N.Y. Sept. 17, 2014). It is only after a plaintiff is determined to be disabled and the medical records reveal substance abuse problems that the ALJ considers whether drug addiction or alcoholism is a material contributing factor to the finding of disability. *Cage*, 692 F.3f at 123. At that point, the critical question is whether the SSA would still find the plaintiff disabled if she ceased using drugs or alcohol. *Id.*

"Periods of abstinence can be evidence used to determine if an impairment would improve to the point of nondisability." *Sherry L. v. Comm'r of Soc. Sec.*, 2022 WL 2180159, at *7 (W.D.N.Y. June 16, 2022). Medical records demonstrating that mental health symptoms were manageable with medication and that functioning improved with substance abuse treatment support a finding that substance abuse is a contributing material factor. *Smith v. Comm'r of Soc. Sec.*, 731 Fed. App's 28, 30 (2d cir. 2018). It is the plaintiff's burden to establish that her drug addiction or alcoholism is not material to the disability determination. *Cage,* 692 F.3d at 30.

In the instant case, the ALJ erroneously dismissed evidence supporting a finding of disability because such evidence was related to substance abuse. This error is evidenced by the ALJ's determination that plaintiff's "substance use history is not material to the determination of disability because, apart from the considerably less-than-12 month period from February through June 2019, the record supports the above

-11-

noted residual function capacity even when considering her substance use history." Dkt. #6, p.31. More specifically, the ALJ discounted the opinion of consultative examiner, Janine Ippolito, Psy.D., because "it reflected the [plaintiff's] level of functioning on the day of her examination in the context of inadequate mental health treatment[3] and during a period of heavy alcohol use" noting, "it does not reflect the claimant's maximum residual functional capacity given appropriate treatment." Dkt. #6, p.29. During that examination, on May 21, 2019, plaintiff informed Dr. Ippolito that she "currently drinks alcohol" and had "been smoking crack cocaine on the weekends to try to cope with her anxiety," with her most recent use approximately 3-4 days prior. Dkt. #6, p.782. Dr. Ippolito observed that plaintiff's manner of relating, social skills and overall presentation was fair to poor and that her affect was depressed, tearful and anxious. Dkt. #6, p.782. In addition, plaintiff's recent and remote memory skills were impaired due to emotional distress. Dkt. #6, p.784.

Dr. Ippolito opined that plaintiff exhibited marked limitations in her ability to interact adequately with supervisors, co-workers and the public, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior and maintain well being. Dkt. #6, p.784. Dr. Ippolito also opined that plaintiff would have moderate limitations in her ability to use reason and judgment to make work-related decisions, sustain concentration and perform a task at a consistent pace, and demonstrate awareness of normal hazards and take appropriate precautions. Dkt. #6,

---

[3] On January 28, 2018, plaintiff reported to her primary care provider that she had been told to discontinue her psychiatric medications while receiving treatment for Hepatitis C and was experiencing worsening anxiety. Dkt. #6, p.503.

p.784. Dr. Ippolito opined that plaintiff's limitations were "due to her emotional distress and consistent with psychiatric and substance abuse problems, and this may significantly interfere with [her] ability to function on a daily basis." Dkt. #6, p.784. Dr. Ippolito recommended that plaintiff

> continue with outpatient mental health counseling as currently provided. It is also recommended that she be referred for psychiatric evaluation and medication management and that she be referred for drug and alcohol treatment given current substance use.

Dkt. #6, p.784.

The ALJ noted that plaintiff "had been "drinking heavily" during the time period of the consultative examination, but was admitted to inpatient treatment to address her alcohol use less than a month later, in June of 2019, and "considered to be psychiatrically stable, in good spirits, thankful to staff and other patients, and in good physical health" upon her discharge in July of 2019. Dkt. #6, p.30. Medical Records from ECMC indicate that plaintiff was admitted through the emergency room for detox with suicidal ideation after overdosing on tylenol with alcohol as prompted by internal voices, and transferred to a rehabilitation facility. Dkt. #6, pp.953 & 957. Alongside the statement referenced by the ALJ, the discharge summary from the treatment center also indicates that plaintiff

> struggled in treatment at times with communication with her peers and staff. She would get angry and had a difficult time managing her anger appropriately. She had a significant trauma history which she shared in individual sessions and was . . . diagnosed with Bipolar II.

Dkt. #6, p.812. Subsequent treatment notes dated February 13, 2020 from plaintiff's

nurse practitioner, Joan Canzoneri, reveal anxious, tearful behavior and anxious,

restless, depressed, constricted and tearful mood and affect, with reports of auditory

and visual hallucinations, as well as intrusive thoughts, flashbacks and nightmares. Dkt.

#6, p.951.


A Mental Health Medical Source Statement ("MHMSS"), completed by

Jakob Smidt, LMSW, and endorsed by NP Canzoneri on May 13, 2020, states that

plaintiff

> experiences ongoing severe anxiety, hyper-vigilance related
> to her PTSD diagnosis that affects her daily routine
> negatively. This also cause[s] depressive symptoms.

Dkt. #6, p.940. The MHMSS opines that "with individual therapy and medication

management, her symptoms can be stabilized but her ability to function in a work

setting is limited." Dkt. #6, p.940. More specifically, the MHMSS indicates that plaintiff

would be unable to meet competitive standards in the following aptitudes needed to do

unskilled work:

> Maintain regular attendance and be punctual within
> customary, usually strict tolerances;
>
> Complete a normal workday and workweek without
> interruptions from psychologically based symptoms;
>
> Perform at a consistent pace without an unreasonable
> number and length of rest periods;
>
> Set realistic goals or make plans independently of others;
>
> Travel in unfamiliar place; and
>
> Use public transportation.

Dkt. #6, p.942-943. In addition, plaintiff would be seriously limited in her ability to:

Remember work-like procedures;
Understand and remember very short and simple
instructions;

Maintain attention for a two hour segment;

Sustain an ordinary routine without special supervision;

Work in coordination with or proximity to others without
being unduly distracted;

Make simple work-related decisions;

Ask simple questions or request assistance;

Accept instructions and respond appropriately to criticism
from supervisors;

Get along with co-workers or peers without unduly
distracting them or exhibiting behavioral extremes;

Respond appropriately to changes in a routine work setting;

Deal with normal work stress;

Interact appropriately with the general public;

Maintain socially appropriate behavior; and adhere to basic
standards of neatness and cleanliness.

Dkt. #6, pp.942-943. In addition, the MHSS indicated that alcohol and substance abuse

does not contribute to plaintiff's functional limitations. Dkt. #6, p.944.


On July 21, 2020, NP Canzoneri completed a Treating Medical Source

Statement reiterating plaintiff's symptoms of ongoing anxiety, hypervigilance,

depression, and isolation that affects [her] daily routine negatively, and indicating that

plaintiff would be precluded from demonstrating, consistent with the MHMSS, many of

the aptitudes needed to do unskilled work more than 20% of an 8-hour workday. Dkt.

#6, p.1020. NP Canzoneri also reported that plaintiff would be precluded from carrying

out very short and simple instructions between 11% and 20% of an 8-hour workday.

Dkt. #6, p.1020. She would be off task more than 30% of an 8-hour workday and

absent four or more days per month. Dkt. #6, p.1021. NP Canzoneri indicated that it

was likely that the functional limitations have existed to the same degree since at least

February 15, 2019. Dkt. #6, p.1021.


       The ALJ found these opinions not at all persuasive because they

indicated that the degree of limitation described was present since February 2019 and

that alcohol use does not contribute to those limitations, explaining:

> This is absurd on its face because, as noted above, the
> [plaintiff] was psychiatrically hospitalized in June 2019
> specifically due to daily heavy alcohol use and was
> discharged in a stable condition once that issue was
> addressed."

Dkt. #6, p.31. Contrary to the ALJ's statement, the very reason for requiring a finding of

disability before assessing the materiality of substance use is the completely plausible

potential for functional limitations to exist and persist independent of substance use or

abstinence. Because the ALJ conflated the initial assessment of disability with the

assessment of materiality of substance use by attributing plaintiff's symptoms to

substance use, and used such attribution to disregard treating source opinions setting

forth specific functional limitations, remand is required.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted and this matter is remanded to the Commissioner for further proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
              **September 29, 2023**

                                          s/ H. Kenneth Schroeder, Jr.
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**

-17-